John BILLINGTON,
Petitioner–Appellee,

v.

James E. YUST, Nancy I. Yust, My Ranch, a partnership; and Frank E. Yust, Respondents–Appellants.

No. 88CA0828.

Colorado Court of Appeals,
Div. IV.

July 27, 1989.

Rehearing Denied Aug. 31, 1989.

Certiorari Denied March 5, 1990.

Cockrell, Quinn & Creighton, Richard M. Foster and Todd A. Jansen, Denver, for petitioner-appellee.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., David W. Stark, Kenneth K. Skogg and Kristen Mix Myer, Denver, for respondents-appellants.

Opinion by Judge REED.

James E., Nancy I., and Frank E. Yust, together with My Ranch, a partnership, (Yusts) appeal the judgment of the district court which denied an award of attorney fees to them. We reverse.

This controversy arose out of a condemnation proceeding instituted in 1984 by John Billington seeking a way of necessity over the lands of the Yusts pursuant to Colo. Const. art. II, § 14, and § 38-1-102(3), C.R.S. (1982 Repl.Vol. 16A).

Billington is the owner of some 31 acres of land in Grand County, Colorado. It is bounded on the north, west, and south by the Yusts' property. It is bounded on the east by land owned by E. Jedd Roe and his corporation. Until 1948, the Billington land and the Roe land were united in common ownership. At that time, access to this united parcel was provided by an adjacent public highway lying farther to the east. Once the parcel became separated by ownership, the property thereafter acquired by Billington became land-locked, with no access to any public road.

Billington's original petition filed on January 13, 1984, sought condemnation of a way of necessity from the public highway, westerly across the Roe land, and across a small portion of the Yusts' property. Thereafter, Billington, by amended petitions, sought condemnation of a right-of-way solely across the Yusts' property with intended access to a secondary public road lying to the south. Although this proposed southerly right-of-way was considerably longer than that lying across the Roe property, it would avoid the expense of construction of a bridge across the Blue River which separated Billington's property from Roe's property. In response to the Yusts' defense that Billington already was entitled to a common law right-of-way across the Roe property and that there was no "necessity" for condemnation, Billington again joined Roe and his corporation as parties to the proceeding, but persisted in his claim for condemnation solely across the Yusts' property.

In a bifurcated court trial in May 1987, the trial court determined that Billington had the right of a reasonable, common law way of necessity across the Roe property arising out of the prior common ownership and subsequent severance of the Billington property by the common grantor. Accordingly, it dismissed Billington's petition for condemnation of the Yusts' property since there was no necessity therefor.

Based upon the trial court's determination, the Yusts sought an award of attorney fees under § 38-1-122(1), C.R.S. (1988 Cum.Supp.). That statute provides, in pertinent part:

"If the court finds that a petitioner is *not authorized by law* to acquire real property or interests therein sought in a

condemnation proceeding, it shall award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings." (emphasis added)

Ultimately, the court refused to award the requested fees, and the Yusts here challenge that ruling.

### I.

In support of the trial court ruling, Billington first argues that the statute is not applicable to him, contending that it authorizes attorney fees only in those instances in which the petitioner has no legal authority to seek condemnation. He argues that he has a statutory and constitutional right to seek a private way of necessity under Colo. Const. art. II, § 14, and § 38–1–102(3), C.R.S. (1982 Repl.Vol. 16A), and accordingly, he is authorized by law within the meaning of the statute. In sum, he argues that the statutory phrase "authorized by law" is synonymous with legal standing to seek condemnation. We decline to adopt this restricted meaning to the phrase.

Here, the trial court found that Billington was already possessed of a reasonable, common law way of necessity across Roe's land. This determination is not contested on appeal. Thus, he was not authorized by law to attempt to condemn a right-of-way across the Yusts' property within the meaning of § 38–1–122(1). *See Platte River Power Authority v. Nelson*, 775 P.2d 82 (Colo.App.1989) (defect in pleading resulting in dismissal permits award of attorney fees to opposing party). Therefore, we hold the statute to be applicable to Billington notwithstanding his legal right to seek condemnation under appropriate circumstances not here present.

### II.

At the time the condemnation proceeding was instituted in 1984, neither § 38–1–122(1) nor any other similar statute was in effect. It became effective as of July 6, 1985, nearly two years before trial of this matter on May 7 and 8, 1987.

Initially, the trial court granted Yusts' motion for attorney fees, but only as to the attorney fees incurred by them subsequent to the effective date of the amendment. However, upon motion for reconsideration, it reluctantly vacated its prior order and denied all attorney fees. It did so based upon its interpretation of *Allchurch v. Project Unicorn, Ltd.*, 33 Colo.App. 173, 516 P.2d 441 (1973).

Yusts contend that the denial of attorney fees is erroneous, and we agree to the extent that the statute was not applied prospectively, *i.e.*, from and after the date it became effective.

Section 38–1–122(1) expresses no intent that it should be applied retrospectively. Accordingly, the statute must be applied prospectively only. *Allchurch v. Project Unicorn, Ltd., supra;* Colo. Const. art II, § 11 (1980 Repl.Vol. 1A).

We disagree with the Yusts contention that because the statute may be construed as remedial or procedural, it should be applied retrospectively. We agree that this statute providing for the imposition of attorney fees as part of recoverable costs is remedial in nature. *See City of Wichita v. Chapman*, 214 Kan. 575, 521 P.2d 589 (1974); *In re Marriage of Shima*, 360 N.W.2d 827 (Iowa 1985). However, in *McCowan v. Equitable Life Assurance Society*, 116 Colo. 78, 179 P.2d 275 (1947), the rule is stated:

> "The amended statute fails to indicate in any way a legislative intent that it should operate retrospectively. The courts have universally construed all legislation as prospective only, unless by plain and positive language it otherwise appears ... and this is true even when applied to statutes which are remedial only."

Thus, although remedial, the statute may nevertheless be applied only prospectively.

The dispute on this issue includes the effect to be given to the prospective application. The Yusts contend, *inter alia,* that the statute applies to existing controversies prospectively from and after its effective date, while Billington argues that prospective application may not include existing controversies since the factual basis for the

controversy preexisted the enactment of the legislation.

We hold that, there being no expressed intent to delay the effective date of this remedial or procedural statute, it became effective immediately and applicable to existing litigation. *See Suley v. Board of Education*, 633 P.2d 482 (Colo.App.1981).

Hence, following the rule announced in *Allchurch, supra*, we conclude that the trial court's initial order awarding attorney fees incurred by the Yusts from and after July 6, 1985, was correct, but that its supplemental order which vacated this award and denied all attorney fees was in error.

We find the other contentions of the parties to be without merit.

That portion of the judgment of the trial court denying attorney fees to the Yusts is reversed, and the cause is remanded with instructions to award to the Yusts the reasonable attorney fees incurred by them in the defense of this condemnation proceeding from and after July 6, 1985.

SMITH and DUBOFSKY, JJ., concur.