962 So.2d 1062 (2007)
Marcelo LUQUE and Aracelly Luque, Appellant,
v.
ALE HOUSE MANAGEMENT, INC., etc., Appellee.
No. 5D06-2918.
District Court of Appeal of Florida, Fifth District.
August 24, 2007.
*1063 Carlos R. Diez-Arguelles, of Martinez, Manglardi, Diez-Arguelles & Tejedor, Orlando, for Appellant.
Lamar D. Oxford, of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for Appellee.
GRIFFIN, J.
Marcelo Luque ["Luque"] and Aracelly Luque ["Mrs. Luque"] appeal the trial court's order granting summary final judgment in favor of Ale House Management Inc., etc. ["Ale House"] and its order denying Luques' Motion for Rehearing.
Ale House operates the Orlando Ale House, where Luque was a regular customer. On January 31, 2003, Luque went to the Orlando Ale House after work. While there, he was served and drank several beers. Around 11 p.m., Luque left. On his way home, a car suddenly came out of a subdivision and cut in front of him. Luque swerved to avoid it. An accident resulted and Luque was severely injured.[1] Luque was taken to the hospital, and routine tests showed that he had a blood alcohol content of 0.135.
That same year, the Luques filed suit against Universal Underwriters, GEICO, and others relating to the injuries he suffered in the accident. As part of the discovery in that suit, the Luques were deposed in March of 2004. Later, on December 12, 2005, the Luques filed this separate action against Ale House. The Luques' suit against Ale House claims that Ale House breached its duty to Luque under section 768.125, Florida Statutes, when it knowingly sold him a substantial amount of alcohol on January 31, 2003.
On April 11, 2006, Ale House filed a motion for summary judgment. In its written motion, Ale House asserted that the sole cause of Luque's accident was the unforeseeable negligence of another driver; that section 768.36, Florida Statutes relieved it of any liability; and that the Luques were attempting to perpetrate a fraud on the court. It reiterated these points at the hearing. Additionally, Defendant argued at the hearing that section 768.125 was enacted for the protection of the public, not the drunkard, and, thus, the drunkard could not bring an action under the statute.
After a hearing on the motion, the trial court entered the summary judgment based on the conclusion that section 768.125 did not create a cause of action. The Luques filed a motion for rehearing of *1064 the trial court's summary judgment order. They argued both the Florida Supreme Court and this Court recognize that a cause of action exists based on the facts of this case. Additionally, they objected to the trial court's decision to rest its holding on a ground not argued by the Ale House. The trial court denied the Luques' motion for rehearing.
The first count of the Luques' complaint against Ale House was titled "VIOLATION OF FLORIDA STATUTE § 768.125 BY [DEFENDANT]." In support of this count, the Luques alleged that Ale House's owners, managers, and employees knew that Luque was habitually addicted to the use of alcohol. They asserted that, by knowingly serving Luque a substantial amount of alcohol on January 31, 2003, Ale House breached its duty under section 768.125, Florida Statutes to not sell or furnish alcohol to persons known to be habitually addicted to that substance.
Ale House did not argue, either in its written motion or at the hearing below, that section 768.125 failed to provide any cause of action against those serving alcohol. Nonetheless, in granting Ale House's motion for summary judgment, the trial court reasoned that "the sole basis alleged for [Ale House's] liability in this case is section 768.125. As section 768.125 does not provide a cause of action, Mr. Luque's claim against [Ale House] fails. Because Mr. Luque's claim fails, so too does his wife's claim for loss of consortium."
Originally, under Florida common law, "a commercial vendor of alcoholic beverages was not liable to either the purchaser or to third persons injured as a result of the consumption of those beverages." Publix Supermarkets v. Austin, 658 So.2d 1064, 1066 (Fla. 5th DCA 1995). The Florida Supreme Court modified this rule by its decision in Davis v. Shiappacossee, 155 So.2d 365 (Fla.1963). Davis held that "violation of the statute prohibiting the sale of alcohol to minors (see section 562.11) could give rise to civil liability" through a negligence per se theory. Publix Supermarkets, 658 So.2d at 1066; see also Ellis v. N.G.N. of Tampa, Inc., 586 So.2d 1042, 1045 (Fla.1991). "As a judicial trend developed extending liability towards vendors of alcoholic beverages, the Florida Legislature intervened in 1980 and enacted section 562.51," which is now codified in section 768.125. Publix Supermarkets, 658 So.2d at 1066. The statute limited the expanded liability of those who provide alcohol. Id. at 1046-1047.
Section 768.125, Florida Statutes (2003), provides:
A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
Thus, section 768.125 "effectively codified the original common law rule absolving vendors from liability for sales but provided exceptions for sales to those who were not of a lawful drinking age or to a person habitually addicted to alcoholic beverage use." Ellis, 586 So.2d at 1046.
In Ellis, Florida's supreme court outlined the legal developments in liability just discussed, and then went on to discuss what causes of action remained against the seller of alcohol under section 768.125. The Ellis court said:
In summary, the above case law has established that, although limited by the provisions of section 768.125, there is a *1065 cause of action against a vendor for the negligent sale of alcoholic beverages to a minor that results in the injury to or death of the minor or a third party. While we have not expressly addressed a case involving a habitual drunkard, we find that the same law applies because: (1) it is an express exception to the statute limiting a vendor's liability, and (2) it is also a sale of alcohol to a class of persons who lack the ability to make a responsible decision in the consumption of alcohol.
Id. at 1047 (emphasis added).
The problem with the trial court's reasoning is that it ignores the fact that section 768.125 presupposes the existence of a cause of action against sellers of alcohol. In "limiting" or modifying the underlying action, section 768.125 now delineates the elements that a party must establish in bringing a civil action against sellers of alcohol. It was error to conclude that because the section does not create a cause of action, it does not define one either. The trial court erred when it granted summary judgment on the ground that an action brought under section 768.125 cannot state a cause of action.
Ale House urges that we should affirm the judgment in their favor even if we conclude that the trial court's basis for the judgment was erroneous. Ale House urges that one or more of the several grounds that were asserted in the motion for summary judgment and argued at the hearing, but not relied on by the trial court, would support the judgment in its favor. Of these, only one appears to have potential. Ale House contends that Luque's intoxication was not a cause-in-fact of the accident that injured him because the accident was entirely caused by the independent negligence of a third party, and that drunk or sober, nothing Luque did or could have done would have altered the outcome. For this proposition, Ale House relies on the deposition testimony of Luque himself.[2]
It may well be that lack of causation will prove to be the basis for a judgment in favor of Ale House in this case, either by summary disposition or after trial, but the record is not well enough developed for this purpose. Discovery is not complete and the testimony of Luque is not necessarily dispositive of the section 768.125 claim. There is evidence in the record *1066 that Luque was in fact significantly impaired by alcohol at the time of the accident. If the other elements of such a claim under section 718.125 are established and extrinsic evidence shows that intoxication did, in fact, cause or contribute to the accident, the fact that the drunkard himself denied that his intoxication contributed to the accident is not determinative of the claim.
REVERSED and REMANDED.
PLEUS and LAWSON, JJ., concur.
NOTES
[1] In his Complaint, the Luques allege that, as a result of the accident, Luque suffered paralysis from the waist down, three broken fingers, an amputated finger, and a fractured shoulder.
[2] In his March 25, 2004 deposition, Mr. Luque gave the following testimony:

Q. All right. And it's your testimony that at the time you were driving after leaving the Ale House, you did not  you were not impaired or did not feel like your faculties were affected at all by the alcohol?
A. That's correct.
Further, in his March 8, 2006 deposition, he said:
Q. Okay. Was your  were you affected in any way by the alcohol you had consumed?
A. In the accident?
Q. Yes, sir.
A. I don't think so. I believe what I did  you know, I  saw that many, many times, and I have six months in the hospital to see that  that sequence every night, and I don't think so. I believe what I did the best to avoid the crash.
Further, Mr. Luque said the following about his accident in his March of 2006 deposition:
Q. Couldn't have avoided it?
A. I don't think so.
Q. Whether you'd anything to drink or not, you could not have avoided it?
A. I don't think so. I would say it was  it was for nowhere.
Q. It was unavoidable.
A. It was pretty much unavoidable.
Q. Regardless whether you had anything to drink or not?
A. Well, I say I don't  it doesn't really have  like I say, I don't believe it would have a lot of to do.
Q. Okay.
A. But, you know, a car just get in front of me. They  they  they just come right off of a subdivision without paying attention.